place after the time of his application, or the date of his patent. But, if the defendant attempts to avoid the patent by showing that the patentee was not the original discoverer of the thing patented, the patent will be considered as relating back to the original discovery. The notice authorized to be given by the sixth section of the law is, that the plaintiff was not the original discoverer, but that the thing patented had been in use. &c., anterior to the supposed discovery of the patentee. Taking it for granted that this patent is to date from the latter end of May, there would be some difficulty in deciding the question of priority between the plaintiff and Hudson, whose saddle was made also the latter end of May. Did the cause turn on this point, the jury should require the defendant to clear up their doubts, by satisfying them that the right of priority was due to Hudson; because upon that fact he grounds the defence, and in his notice he undertakes to establish it. But at all events, if the evidence of Andrews be believed by the jury, and if they are also of opinion that the connecting of the skirts to the pad of the saddle, spoken of by this witness, is a mere difference in form from the patented saddle, the plaintiff cannot be considered as an original discoverer. This, if so found by the jury, is fatal to the plaintiff's right.

The last objection, or the second made by the defendant, is, we think, fully made out, and is not less fatal to the plaintiff's recovery. This is founded on the imperfect description of the thing patented, given in the specification. It professes to be an improvement in the manufacturing of saddles without trees. The materials and the manner of making the saddles described are all old, or if there be any thing new in the combination, or in the application of the old to the new, they are not distinguished; nor does the specification describe, or attempt to describe in what the improvement consists. It is quite impossible to say, whether it consists in substituting some other material for the tree, so as to constitute an improvement of the old saddle tree; or in adding skirts and flaps to the pad saddle, which was in use long before the date of the plaintiff's discovery, and was made without trees; or whether it consists in all, or any of the other described operations in the making of saddles. If in all, then the patent is broader than the discovery, since it is clear that the materials, as well as the process in the manufacture, described in the specification, are old. If the improvement consists in any one or more of the particulars set forth in the specification, it ought to have been so stated, in order that other persons might have known how to avoid any infringement of the plaintiff's right; and that the public might have the benefit of the discovery, by referring to the specification itself, after the expiration of the plaintiff's monopoly. It is not enough for the plaintiff's counsel or the witnesses to point out at the trial, or even for the jury to perceive by examination of the thing patented, and comparing it with others before in use, what it is that constitutes the improvement. This would afford no advantage to third persons, and least of all would it afford consolation to the defendant, who, if he has offended at all, did it innocently, and through ignorance, and can make atonement in no other way, but by submitting to the penalty which the law imposes upon him, and the troubles and expense incident to litigation. Third persons wishing to avoid these consequences, can safely depend upon no other information than what the records of the secretary of state's office may afford. No description of the discovery secured by a patent will fulfil the demands of justice and of the law, but such as is of record there, and of which all the world may have the benefit. It was insisted by the plaintiff's counsel, that this specification is perfectly intelligible to an artist, who could experience no difficulty in making such a saddle as is there described; and that if it be not so, still the defendant cannot avail himself of the defect, unless he had stated it in his notice, and also proved at the trial an intention in the plaintiff to deceive the public. But these observations are all wide of the objection, which is not that the specification does not contain the whole truth relative to the discovery, or that it contains more than is necessary. It is admitted that the specification does not offend in either of these particulars. But the objection is, that throughout the whole of a very intelligible description of the mode of making the saddle, the patentee has not distinguished what was new, from what was old and before in use, nor pointed out in what particulars his improvement consisted. Upon this objection then, the verdict ought to be for the defendant, whatever the jury may think on the other points.[2]

Plaintiff suffered a nonsuit.

---

DIXON (POTTER v.). See Case No. 11,325.

---

## Case No. 3,932.
### DIXON v. RAMSAY.
.[1 Cranch, C. C. 472.] [1]

Circuit Court, District of Columbia. Nov. Term, 1807.

ACTION AGAINST EXECUTORS—PLEADING.

Counts charging the defendants as executors, upon the promise of their testator, and upon their own promise as executors, in consideration of assets, may be joined in the same declaration, and the judgment upon each count will be de bonis testatoris.

---

[2] The court refused to allow evidence to be given, to prove that saddles like the plaintiff's had been in use in England many years ago, the notice being special and confined to the alleged use within the United States.

[1] [Reported by Hon. William Cranch, Chief Judge.]

The declaration contained six counts, but made no profert of the plaintiff's letters of administration. The 1st count was on the promise of the testator. 2d. Same, quantum valebant. 3d. Money had and received by the testator. 4th. A promise by the defendants as executors in consideration that testator was indebted and in consideration of assets. 5th. Insimul computasset, and a similar promise by the defendants as executors in consideration of assets. 6th. That two of the executors accounted as executors with plaintiff and a like promise. General demurrer to the declaration.

Mr. Taylor, for defendants, contended that the counts were such as cannot be joined, and that such misjoinder may be taken advantage of upon general demurrer, and so may the want of profert. The letters of administration are part of the plaintiff's title to recover, and without profert the defendant is not entitled to oyer of them. Before the statute, the want of profert was fatal on general demurrer, for it was matter of substance. Com. Dig. "Pleader," O 17. There is a difference between the Virginian and the English statute of jeofails. The Virginia act does not specify what shall not be fatal on general demurrer. It must, however, be the want of something necessary to the justice of the case. An account stated by executors, as executors, is a personal undertaking; where the default of the executor is the cause of action, the judgment is de bonis propriis. Com. Dig. "Pleader," 2 D 15. If the judgments upon the respective counts are to be against the defendants in different rights, the counts are incompatible, and there can be no correct judgment rendered upon them.

E. J. Lee, for plaintiff, cited the cases of Courtney v. Hunter [Case No. 3,285]; Henderson v. Parson's Ex'rs, at November term, 1805 (not reported); and Faxon v. Dyson [Case No. 4,705].

THE COURT (DUCKETT, Circuit Judge, absent), without hearing the other side, decided, upon the authority of those cases, that the judgment upon the demurrer ought to be for the plaintiff.

---

## Case No. 3,933.

### DIXON v. RAMSAY.

[1 Cranch, C. C. 496.][1]

Circuit Court, District of Columbia. July Term, 1808.

#### SALES OF LAND UNDER WILL.

The proceeds of sales of lands made under a will to pay debts are equitable assets.

Assumpsit. Plene administravit, and issue.

Mr. Taylor, for defendant, contended that, on the plea of plene administravit, the plaintiff could not give evidence of lands ordered by the will to be sold by the executor to pay debts, and sold accordingly. They are only assets in equity, and to be distributed pari passu.

C. Lee, for plaintiff. Money received for lands sold by executors, under a will devising them to be sold by executors to pay debts, is assets at law and not in equity. Burwell v. Corrant, Hardr. 405.

Mr. Taylor, in reply. The case in Hardres is not now law. Courts have leaned to the other side, and rather consider them equitable than legal assets. If equitable they cannot be given in evidence in a suit at law. 6 Bac. Abr. 537, tit. "Exectors," H. Gwillim's note; Toll. Ex'rs, 328; Newton v. Bennet, 1 Brown, Ch. 135; Silk v. Prime, Id. 138; 2 Fonbl. Eq. bk. 4, pt. 2, c. 2. § 1, note d; Harg. Co. Litt. 113. note 2; Freemoult v. Dedire. 1 P. Wms. 430; Batson v. Lindegreen, 2 Brown, Ch. 94; Prowse v. Abingdon, 1 Atk. 484.

C. Lee, contra. On plene administravit the defendant must show that he has fully administered equitable as well as legal assets. The plaintiff is a simple contract creditor; if he had been a specialty creditor it might possibly be otherwise. The cases are contradictory. Toll. Ex'rs, 331; Blatch v. Wilder, 1 Atk. 420.

THE COURT (nem. con.) was of opinion that the money arising from the sale of the land was equitable and not legal assets, and that the defendant was only bound to account for legal assets in this case.

---

## Case No. 3,934.

### DIXON et al. v. UNITED STATES.

[1 Brock. 177.][1]

Circuit Court, D. Virginia. May Term, 1811.

EMBARGO BONDS—DECLARATION UPON—VARIANCE—VALIDITY OF BOND AT COMMON LAW — STATUTORY REQUIREMENTS—CONTRACT IN RESTRAINT OF TRADE.

1. The assignment of breaches in an action upon an embargo bond, is a part, and a very important part, of the declaration: and upon demurrer to the declaration, the plaintiffs' attorney will not be permitted to strike out the assignment of breaches, on the ground that the declaration is good without it. Such a course would not be tolerated in any court.

2. A variance between the declaration and bond, is an erroneous description of the instrument referred to, so that it does not appear to be the same when produced in evidence, either on oyer, or at the trial.

3. A bond made payable to "The United States of America," would. it seems, be binding at common law, for "The United States of America" is a corporation, endowed with the capacity to sue, and be sued, to convey and receive property.

[Cited in U. S. v. Ames, Case No. 14.441.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by John W. Brockenbrough, Esq.]